**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

SEAN HARRINGTON,
*Defendant-Appellant*.

No. 12-10526

D.C. No.
1:11-cr-00427-
AWI-1

OPINION

Appeal from the United States District Court
for the Eastern District of California
Anthony W. Ishii, Senior District Judge, Presiding

Argued and Submitted
August 16, 2013—San Francisco, California

Filed April 18, 2014

Before: Stephen Reinhardt, John T. Noonan, and
Andrew D. Hurwitz, Circuit Judges.

Opinion by Judge Noonan

## SUMMARY[*]

### Criminal Law

The panel reversed a conviction for refusal to submit to a blood alcohol test in a national park.

The panel held that it was fundamentally unfair, and a violation of due process, to convict the defendant when park rangers three times told him that his refusal to submit to a blood alcohol test was not in itself a crime, even though it was.

### COUNSEL

Katherine L. Hart (argued), Fresno, California, for Defendant-Appellant.

Megan Anne Schultz Richards (argued) and Brian William Enos, Assistant United States Attorneys, Benjamin B. Wagner, United States Attorney, Camil A. Skipper, Appellate Chief, Fresno, California, for Plaintiff-Appellee.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**OPINION**

NOONAN, Circuit Judge:

Sean Harrington appeals his federal conviction for refusal to submit to a test of his blood alcohol content.

We reverse.

**I**

**A**

On the night of June 10, 2011, a federal park ranger observed Harrington's car stopped in a nonpublic area of Yosemite National Park. The car's lights were on; its engine was running. The ranger approached the vehicle, finding Harrington alone in the driver's seat. According to the ranger, Harrington was inebriated, argumentative, and upset. Harrington refused a field sobriety test and was arrested on suspicion of driving under the influence (DUI).

Later, at the police station, Harrington refused any test to determine his blood alcohol level. The jailer, another federal park ranger, erroneously read the California admonition to Harrington. It states:

> You are required by state law to submit to a [breath test] or other chemical test to determine the alcohol and/or drug content of your blood. . . . If you refuse to submit, or fail to complete a test, your driving privilege will be suspended for one year or revoked for two or three years. . . . Refusal or failure to

complete a test may be used against you in court. Refusal or failure to complete a test will also result in a fine and imprisonment *if this arrest results in a conviction of driving under the influence*. (emphasis added.)

The supervising ranger later read the California admonition twice more. Harrington was never read the federal admonition, nor was he informed of the consequences under federal law of his refusal to be tested. Harrington insisted on speaking to a lawyer but was rebuffed. No blood or breath test was ultimately performed.

**B**

On June 29, 2011, Harrington was arraigned in federal district court on a six-count misdemeanor complaint. He pleaded guilty to three counts, including an open container violation and possession of marijuana. The government dismissed two counts, including the DUI charge. Only one misdemeanor—refusal to submit to a test to determine blood alcohol content—remained at issue.

A magistrate judge conducted Harrington's bench trial. After ordering supplemental briefing on the discrepancy between the admonition Harrington actually received and the admonition he should have received, the magistrate judge found Harrington guilty of the refusal charge. He was sentenced to 36 months of unsupervised probation and 120 days of confinement, with 90 days suspended pending probation. The district court affirmed. Harrington timely appeals.

**II**

The fundamental fact is that the park rangers misinformed Harrington three times as to the criminal consequences of his refusal. As Harrington was arrested in a national park, the applicable law is that of the United States, not California. *See* 16 U.S.C. § 3.

Federal law provides: "Refusal by an operator to submit to a test is prohibited and proof of refusal may be admissible in any related judicial proceeding." 36 C.F.R. § 4.23(c)(2). Thus, under California law, refusing a test is criminally sanctioned only if the suspect is later found guilty of DUI; under federal law, by contrast, refusing a blood alcohol test is itself a misdemeanor unrelated to the outcome of any DUI charge. The federal admonition that the park rangers should have read is illuminating:

> If you refuse to submit to a test, or fail to complete a test, *you will be charged with an additional offense for refusing the test*, which carries a maximum penalty of 6 months in jail and/or a $5,000 fine. This charge is in addition to the DUI charge. (emphasis added.)

The question before us, therefore, is whether the park rangers' error violated Harrington's right to due process. We review this question de novo. *See Buckingham v. Sec'y of U.S. Dep't of Agric.*, 603 F.3d 1073, 1080 (9th Cir. 2010).

## A

The Fifth Amendment establishes that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. Due process "is not a technical conception with a fixed content unrelated to time, place and circumstances." *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976) (internal quotation marks omitted). Rather, it "is flexible and calls for such procedural protections as the particular situation demands." *Id.* (internal quotation marks omitted). The touchstone is "fundamental fairness." *Walters v. Nat'l Ass'n of Radiation Survivors*, 473 U.S. 305, 320-21 (1985).

To determine whether Harrington was denied due process, we weigh (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedure[] used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest" in keeping the existing procedure. *Mathews*, 424 U.S. at 335.

First, the restraint on physical freedom experienced during incarceration is the quintessential deprivation of a person's liberty. *See Oviatt ex rel. Waugh v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992). Harrington's liberty interest was jeopardized when the rangers misinformed him of the actual consequences of refusing the test—namely, a criminal charge carrying a potential penalty of six months' imprisonment. Jeopardy became reality when the magistrate judge sentenced Harrington to 120 days in jail.

Second, government officials risk erroneously depriving a suspect of his liberty when they misrepresent the legal

consequences of his choices. *See United States v. Batterjee*, 361 F.3d 1210, 1216 (9th Cir. 2004) ("[T]he Due Process Clause of the Constitution . . . prohibits convictions based on misleading actions by government officials."). Here, the rangers offered Harrington a choice of whether or not to submit to testing. They advised him three times that refusal to submit to testing had one certain consequence—he would lose his driver's license for a period of time—and two additional possible consequences—his refusal could be used against him in court, and, if he were later convicted of DUI, the refusal would result in a fine or imprisonment.

This was false. In reality, the consequence of refusal was far more severe than the suspended license described by the rangers. Under the applicable federal law, if Harrington refused he could be—and he was—charged with a freestanding criminal offense for the refusal, in addition to and independent of any DUI charge. *See* 36 C.F.R. § 4.23(c)(2).

There is a stark difference between the consequences of refusal as described by the rangers and the real consequences, as Harrington's own case demonstrates. Because Harrington's DUI charge was ultimately dropped, under California law there would have been no further consequences of his refusal to be tested. Under federal law, however, the criminal charge for refusal would persist and a sentence of imprisonment could result, as happened in Harrington's case. Had Harrington not been misled as to the consequences of his refusal, he might well have preferred to submit to testing rather than to fight an additional criminal charge. "The erroneous deprivation thus consists of attaching sentencing consequences to a choice that an individual may not have made had the state provided him or her with

accurate information. In other words, absent the inaccurate information, the . . . jail term may not have been imposed." *Roberts v. Maine*, 48 F.3d 1287, 1293 (1st Cir. 1995).

Finally, the government does not contend that it has any interest in reading the California admonition in a federal jurisdiction. We do not invent one. Using the federal admonition requires no additional administrative burden: the park rangers already have it at their disposal. Indeed, the government's interest aligns with Harrington's because federal employees should understand the laws governing the jurisdictions they patrol. There is no profit to be gained from jurisdictional confusion.

In light of the foregoing, we conclude that the *Mathews* factors tip in Harrington's favor. In other words, it was fundamentally unfair to convict Harrington on the refusal charge when he was told time and again that his refusal to submit to a blood alcohol test was not in itself a crime, even though it was.

## B

Our conclusion is in no way undermined by *South Dakota v. Neville*, 459 U.S. 553 (1983). There, the Supreme Court held that due process is not violated when police officers fail to inform a suspected drunk driver that his refusal to submit to a blood alcohol test may be used against him at trial. *Id.* at 565–66. As the officers had warned the suspect that his refusal could lead to a license suspension, he knew that refusing the test "was not a 'safe harbor,' free of adverse consequences." *Id.* at 566. That the suspect was not informed of *all* the possible adverse consequences of his refusal was not constitutionally fatal because the officers'

warnings did not "misleading[ly]" imply that no other such consequences would follow. *Id.* at 565. Accordingly, the State's use of the suspect's refusal at trial—in spite of the officers' "failure to warn" him of this precise consequence— did not transgress principles of "fundamental fairness." *Id.* at 566.

Harrington's case involves more than just a failure to warn. Here, unlike in *Neville*, the warning read to Harrington was affirmatively misleading: the rangers misrepresented the criminal consequences of his refusal by giving him the incorrect admonition. And here, unlike in *Neville*, the consequence of Harrington's refusal was a criminal charge carrying with it the possibility of six months in prison. *Neville*, therefore, does not control.

The First Circuit has agreed with us, in a remarkably similar case. In *Roberts v. Maine*, 48 F.3d 1287 (1st Cir. 1995), our sister circuit found a due process violation where a suspected drunk driver was not informed of a very important criminal consequence of refusing a chemical test: a mandatory two-day jail sentence upon conviction for the underlying DUI offense. *Id.* at 1289. After being denied a chance to speak with an attorney, the suspect refused the test and was eventually sentenced to two days' imprisonment for the refusal itself. *Id.* On these facts, the court weighed the *Mathews* factors, distinguished *Neville* for reasons similar to ours, and found that the suspect's right to due process had been violated. *Id.* at 1291–96.

We read *Roberts* to hold that, if an admonition is given, due process is offended when the warning misleads the DUI suspect as to whether he may be criminally punished for the refusal itself. Harrington, like the suspect in *Roberts*, was not

informed that his refusal would directly, independently, and irrevocably result in criminal liability. Indeed, the due process violation is more flagrant here than in *Roberts* because the rangers did not simply omit critical information; they read Harrington the wrong information three times. The risk to Harrington's liberty interest is also weightier: a maximum of six months' imprisonment compared to just two days. Finally, the criminal punishment in *Roberts* was conditioned on the suspect's conviction for the underlying DUI offense; Harrington's criminal charge, however, was unconditional. Harrington's appeal, thus, presents an even more compelling case for reversal.

* * *

We doubt that the Constitution requires any admonition be given to DUI suspects. *Cf. Missouri v. McNeely*, 133 S. Ct. 1552, 1566 (2013) (noting that "States have a broad range of legal tools to enforce their drunk-driving laws," with "all 50 States hav[ing] adopted implied consent laws"); *Neville*, 459 U.S. at 565 (explaining that one's "right to refuse" a blood alcohol test is not of constitutional origin; it is "simply a matter of grace bestowed by" state legislatures). However, when an admonition *is* given, we hold that due process is violated where, as here, the admonition incorrectly informs the suspect that his refusal is not a freestanding crime, when in fact it is.

**REVERSED.**