Filed 5/23/18

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>PETER BALOV,<br><br>    Defendant and Appellant. | D073018<br><br><br><br>(Super. Ct. Nos. CA270404 &<br>M199722) |

APPEAL from an order of the Superior Court of San Diego County, Timothy R. Walsh, Judge.  Affirmed.

Law Office of David Wilson and David Wilson; Law Offices of Gretchen von Helms and Gretchen C. von Helms for Defendant and Appellant.

Mara W. Elliot, City Attorney, John C. Hemmerling, Assistant City Attorney, and Shelley A. Webb, Deputy City Attorney, for Plaintiff and Respondent.

After Peter Balov was arrested for suspected drunk driving, the arresting officer advised Balov "that per California law he was required to submit to a chemical test, either a breath or a blood test."  Balov did not object and chose a blood test, which showed his

blood alcohol level was above the legal limit. Balov was charged with misdemeanor driving under the influence (Veh. Code, § 23152, subds. (a) & (b)).[1] Before trial, Balov moved to suppress the results of the blood test, arguing, inter alia, that his consent to the test was coerced. The court denied the motion, the appellate division affirmed, and Balov now challenges the ruling here, arguing as he did below that his consent to the blood test was not voluntary. We reject Balov's argument and affirm the order.

FACTUAL AND PROCEDURAL BACKGROUND

At the hearing on Balov's motion to suppress, San Diego Police Officer Luis Martinez testified that just before 3:00 a.m. on March 22, 2015, he saw Balov abruptly stop his black Range Rover in an intersection when the traffic signal turned yellow. In response, Martinez turned on his police vehicle's emergency lights and instructed Balov to pull over. Martinez reported that he noticed the smell of alcohol on Balov's breath and that Balov's speech was slurred. Balov admitted he had been drinking and agreed to submit to field sobriety exercises and a preliminary breath sample, which showed his blood alcohol level was over the legal limit.

As a result, Martinez placed Balov under arrest for driving under the influence of alcohol. Martinez testified that after the arrest, he informed Balov of the implied consent law, telling Balov "that per California Law he was required to submit to a chemical test, either a breath or a blood test." Martinez did not inform Balov of the statutory consequences of refusing a test. Balov stated he wanted a blood test and Martinez drove

---

[1]    Undesignated statutory references are to the Vehicle Code.

Balov to the police headquarters. During the routine blood draw that followed, Balov was calm and gave no indication of wanting to refuse the test.

Before trial, Balov moved to suppress the results of the warrantless blood test under Penal Code section 1538.5, arguing that his consent was invalid because Martinez had not explained the consequences of refusing chemical testing under section 23612. The city attorney opposed the motion. After the evidentiary hearing, the trial court denied Balov's motion. The court concluded that under the totality of the circumstances, Balov voluntarily consented to the blood test and the test was not taken in violation of his Fourth Amendment right to be free from unreasonable searches.

Balov challenged the order in the San Diego County Superior Court's Appellate Division, which unanimously affirmed the trial court's order. After the city attorney filed a request for publication of the appellate division's order, on its own motion, the division certified the matter for transfer to this court. The certification order notes a split of authority on the issue of implied consent contained in two decisions of the Santa Clara County Superior Court Appellate Division, *People v. Mason* (2016) 8 Cal.App.5th Supp. 11 (*Mason*), and *People v. Agnew* (2015) 242 Cal.App.4th Supp. 1 (*Agnew*). We accepted the transfer under California Rules of Court, rule 8.1008.

DISCUSSION

I

"The standard of appellate review of a trial court's ruling on a motion to suppress is well established. We defer to the trial court's factual findings, express or implied, where supported by substantial evidence. In determining whether, on the facts so found,

3

the search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment." (*People v. Glaser* (1995) 11 Cal.4th 354, 362.)

A blood draw is a search subject to the Fourth Amendment. (*Schmerber v. Cal.* (1966) 384 U.S. 757, 767.) Under the Fourth Amendment "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause . . . ." While the Fourth Amendment does not specify when a search warrant must be obtained, the United States Supreme Court "has inferred that a warrant must generally be secured." (*Kentucky v. King* (2011) 563 U.S. 452, 459.) However, "the ultimate touchstone of the Fourth Amendment is 'reasonableness.' " (*Brigham City v. Stuart* (2006) 547 U.S. 398, 403.) "The Fourth Amendment does not proscribe all state-initiated searches and seizures; it merely proscribes those which are unreasonable." (*Florida v. Jimeno* (1991) 500 U.S. 248, 250.) It is well established that a *consensual* search does not violate the Fourth Amendment "because it is no doubt reasonable for the police to conduct a search once they have been permitted to do so." (*Id*. at pp. 250-251.)

"The Fourth Amendment test for a valid consent to search is that the consent be voluntary, and 'voluntariness is a question of fact to be determined from all the circumstances . . . .' " (*Ohio v. Robinette* (1996) 519 U.S. 33, 40.) " 'If the validity of a consent is challenged, the prosecution must prove it was freely and voluntarily given— i.e., "that it was [not] coerced by threats or force, or granted only in submission to a claim of lawful authority." [Citations.]' " (*People v. Harris* (2015) 234 Cal.App.4th 671, 689-690 (*Harris*).) " ' "The . . . voluntariness of the consent is to be determined in the first

4

instance by the trier of fact; and in that stage of the process, 'The power to judge credibility of witnesses, resolve conflicts in testimony, weigh evidence and draw factual inferences, is vested in the trial court. On appeal all presumptions favor proper exercise of that power, and the trial court's findings—whether express or implied—must be upheld if supported by substantial evidence.' " ' " (*Id.* at p. 690.)

Under section 23612, a "person who drives a motor vehicle is deemed to have given his or her consent to chemical testing of his or her blood or breath for the purpose of determining the alcoholic content of his or her blood, if lawfully arrested for an offense allegedly committed in violation of Section 23140, 23152, or 23153." (§ 23612, subd. (a)(1)(A).) The statute "applies broadly and generally to 'those who drive'—that is, to those who avail themselves of the public streets, roads, and highways to operate motor vehicles in this state." (*Troppman v. Valverde* (2007) 40 Cal.4th 1121, 1139 (*Troppman*).)

The implied consent law was adopted in response to the United States Supreme Court's decision in *Schmerber*, which "approved forcible, warrantless chemical testing of arrested persons under certain conditions, including certain exigent circumstances." (*Agnew, supra*, 242 Cal.App.4th Supp. at p. 6.) " 'Although it is clear under *Schmerber* that a person who has been lawfully arrested may have a blood sample forcibly removed without his consent, provided [certain conditions are met], nevertheless such an episode remains an unpleasant, undignified and undesirable one.' " (*Mercer v. Department of Motor Vehicles* (1991) 53 Cal.3d 753, 759, quoting *People v. Superior Court of Kern County* (*Hawkins*) (1972) 6 Cal.3d 757, 764.) "[B]y enacting the implied consent law,

5

thereby providing an alternative method of compelling a person arrested for driving while under the influence to submit to chemical testing, the Legislature afforded officers a means of enforcement that does not involve physical compulsion." (*Troppman, supra*, 40 Cal.4th at p. 1136.)

Under section 23612, by the act of driving on California's roads, Balov accepted the condition of implied, advance consent if lawfully arrested for drunk driving.[2] That advance consent, however, could also have been withdrawn at the time of arrest by Balov's objection to a breath test or blood draw. " '[T]he implied consent law is explicitly designed to allow the driver, and not the police officer, to make the choice as to whether the driver will give or decline to give *actual* consent to a blood draw when put to the choice between consent or automatic sanctions. Framed in the terms of "implied consent," choosing the "yes" option affirms the driver's implied consent and constitutes actual consent for the blood draw. Choosing the "no" option acts to withdraw the driver's implied consent and establishes that the driver does not give actual consent.' [Citation.] Therefore, rather than determine whether 'implied consent' to a chemical test satisfies the Fourth Amendment, we must determine whether submission to a chemical test, after advisement under the implied consent law, is freely and voluntarily given and constitutes *actual* consent." (*Harris, supra*, 234 Cal.App.4th at p. 686.) The totality of the

---

2    In his briefing, Balov discusses another implied consent statute, section 13384, which makes consent to chemical testing if arrested for driving under the influence a condition of obtaining a California driver's license. As the city attorney points out in her brief, however, the People did not rely on this provision in the trial court and it is not relevant on appeal.

circumstances that must be considered in determining if consent is voluntary includes not only advance consent, but the driver's conduct at the time of arrest and the circumstances surrounding the testing.

II

As he did below, Balov argues that because he was not informed by Martinez that he could object to chemical testing, his consent to the blood test was not voluntary and the warrantless search was obtained in violation of his Fourth Amendment right. In support of this argument, Balov looks primarily to the United States Supreme Court's decision in *Bumper v. North Carolina* (1968) 391 U.S. 543 (*Bumper*). *Bumper* considered whether a false claim by law enforcement that it had a warrant to search the defendant's home vitiated the defendant's cohabitant's subsequent consent to the search. The court held that it did, stating that a "search conducted in reliance upon a warrant cannot later be justified on the basis of consent if it turns out that the warrant was invalid." (*Id*. at p. 549.)

Balov agrees that "it is the totality of circumstances of an individual's consent that must be analyzed to determine whether consent was voluntary or coerced." However, he argues that Martinez's statement "that per California Law [Balov] was required to submit to a chemical test," is no different than the false claim of a search warrant in *Bumper* and precludes a finding that Balov's consent was voluntary. We do not agree. Unlike law enforcement's claim in *Bumper*, Martinez's statement to Balov was not false.

Section 23612 required Balov to submit to a chemical test. If Balov refused, he would have faced the consequences specified under the consent law including a fine, the

7

loss of his driver's license, and mandatory imprisonment if convicted of driving under the influence. (§ 23612, subd. (a)(1)(D).) Section 23612 requires the driver to be told that his or her failure to submit to a test will result in these consequences.[3] However, no "presumption of invalidity attaches if a citizen consent[s to a search] without explicit notification that he or she was free to refuse to cooperate. Instead, the [United States Supreme] Court has repeated that the totality of the circumstances must control, without giving extra weight to the absence of this type of warning." (*United States v. Drayton* (2002) 536 U.S. 194, 207; see *Harris, supra*, 234 Cal.App.4th at p. 692 ["failure to strictly follow the implied consent law does not violate a defendant's constitutional rights"].)

---

[3]    The statute provides that the driver "shall be told that his or her failure to submit to, or the failure to complete, the required chemical testing will result in a fine, mandatory imprisonment if the person is convicted of a violation of Section 23152 or 23153, and (i) the suspension of the person's privilege to operate a motor vehicle for a period of one year, (ii) the revocation of the person's privilege to operate a motor vehicle for a period of two years if the refusal occurs within 10 years of a separate violation of Section 23103 as specified in Section 23103.5, or of Section 23140, 23152, or 23153 of this code, or of Section 191.5 or subdivision (a) of Section 192.5 of the Penal Code that resulted in a conviction, or if the person's privilege to operate a motor vehicle has been suspended or revoked pursuant to Section 13353, 13353.1, or 13353.2 for an offense that occurred on a separate occasion, or (iii) the revocation of the person's privilege to operate a motor vehicle for a period of three years if the refusal occurs within 10 years of two or more separate violations of Section 23103 as specified in Section 23103.5, or of Section 23140, 23152, or 23153 of this code, or of Section 191.5 or subdivision (a) of Section 192.5 of the Penal Code, or any combination thereof, that resulted in convictions, or if the person's privilege to operate a motor vehicle has been suspended or revoked two or more times pursuant to Section 13353, 13353.1, or 13353.2 for offenses that occurred on separate occasions, or if there is any combination of those convictions, administrative suspensions, or revocations." (§ 23612, subd. (a)(1)(D).)

Here, Balov freely consented to the search of his blood. After driving on the public road and being lawfully arrested for driving under the influence, Martinez correctly told Balov he was required to submit to a breath or a blood test. Although the statement was incomplete under section 23612, subdivision (a)(1)(D), there was no evidence Martinez intended to deceive Balov about his right to refuse a test altogether. Nor was Martinez's statement about the implied consent law demonstrably false.[4] (See *Harris, supra*, 234 Cal.App.4th at p. 692 ["failure to strictly follow the implied consent

---

[4] Balov asserts that under *Harris, supra*, 234 Cal.App.4th 671, which also upheld a consensual search under similar facts, we must conclude that his consent was coerced because—unlike the officer in *Harris*—Martinez did not reference the consequences of refusal. In *Harris*, the defendant was pulled over for speeding and dangerous driving, and then arrested after exhibiting signs of drug use. The arresting officer told the defendant "that, based on his belief that defendant was under the influence of a drug, defendant was required to submit to a chemical blood test. [The officer] advised defendant that he did not have the right to talk to a lawyer when deciding whether to submit to the chemical test, that refusal to submit to the test would result in the suspension of his driver's license, and that refusal could be used against him in court. Defendant responded, 'okay,' and [the officer] testified that at no time did defendant appear unwilling to provide a blood sample." (*Id*. at p. 678.)

9

law does not violate a defendant's constitutional rights"].)  Martinez's failure to communicate the consequences of refusing a chemical test did not make Martinez's statement any more or less coercive than if the information had been provided.  In neither case is the driver advised of his or her right to refuse to test altogether.[5]

Further, at no point before or after Balov consented to the test did he indicate any objection.  Looking at the totality of the circumstances, including Martinez's conduct, the existence of the implied consent law, and Balov's actions before and after he consented,

On appeal of the denial of the defendant's motion to suppress, the Court of Appeal rejected the defendant's argument that his consent was not voluntary because the arresting officer's statements concerning the implied consent law were false.  The defendant argued the officer's statements were false because section 23612, subdivision (a)(1)(A) requires the driver to "be given the choice between a blood or breath test" and that the officer incorrectly informed him that his license would be suspended for two or three years (rather than one year).  (*Harris, supra*, 234 Cal.App.4th at p. 691.)  In rejecting this argument, the *Harris* court upheld the trial court's finding that the arresting officer did not intentionally deceive the defendant about the implied consent law and concluded the trial court appropriately considered all the circumstances to find the defendant's consent to the blood test was voluntary.  (*Id*. at pp. 691-692.)  Contrary to Balov's assertion, *Harris* does not hold that failure to inform the defendant of the consequences of refusing a chemical test under section 23612 necessarily results in coerced consent.  Rather, *Harris* reiterates the principle that the court must look at the totality of the circumstances to determine the voluntariness of a defendant's consent.

5       Likewise, we disagree with *Mason, supra*, 8 Cal.App.5th Supp. 11 that the failure to communicate the consequences of refusing the chemical test necessarily conveys to the driver that refusal to test is not an option.  Indeed, the *Mason* panel itself conceded that this conclusion is merely an implication that could be drawn by the driver, and not a necessary conclusion.  (*Id*. at p. 33.)  "[R]equiring the statutory admonition about the consequences of withdrawing consent in every case, or even treating that as the critical factor, would improperly elevate the admonishment to a constitutional requirement under the Fourth Amendment."  (*Agnew, supra*, 242 Cal.App.4th Supp. at p. 16; see *Ritschel v. City of Fountain Valley* (2006) 137 Cal.App.4th 107, 119 [rejecting plaintiff's claim that his Fourth Amendment right against an unreasonable search was violated by the police officers' failure to comply with section 23612].)

we cannot say the trial court's finding that Balov voluntarily consented to the blood test was error.

DISPOSITION

The order is affirmed.

BENKE, Acting P. J.

WE CONCUR:

HUFFMAN, J.

O'ROURKE, J.