Filed 3/11/20

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| THE PEOPLE, | C080065 |
| Plaintiff and Respondent, | (Super. Ct. No. 62130483) |
| v. | |
| SHARON DARLENE LOPEZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Placer County, Jeffrey Penney, Judge. Affirmed.

Kenneth Cleon Brooks, Retained Counsel for Defendant and Appellant.

Kamala D. Harris, Xavier Becerra, Attorneys General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Senior Assistant Attorney General, Catherine Chatman, Supervising Deputy Attorney General, Raymond L. Brosterhous II, R. Todd Marshall, and Kevin L. Quade, Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendant Sharon Darlene Lopez appeals from the trial court's denial of her motion to suppress evidence obtained from a warrantless blood draw. Police conducted the blood draw upon defendant's arrest for driving under the influence of a controlled substance. The officer instructed defendant she was required to undergo a blood draw by the state's implied consent law, but he did not relate the law's admonitions regarding the consequences should she refuse the test. Defendant did not object or resist, and the draw was performed without a warrant. The trial court concluded defendant consented to the test. We conclude substantial evidence supports the court's ruling, and we affirm the judgment.

FACTS AND PROCEEDINGS

The People charged defendant with one misdemeanor count of driving under the influence of a controlled substance. (Veh. Code, § 23152, subd. (a).) (Statutory references that follow are to the Vehicle Code unless otherwise stated.)

Defendant moved to suppress evidence pursuant to Penal Code section 1538.5. She claimed her blood sample, among other matters, was drawn without her consent or a warrant in violation of the Fourth Amendment.

The following evidence was adduced at the trial court's hearing on the suppression motion. Because defendant does not claim her consent was the result of an unlawful arrest, we relate the facts relevant to the voluntariness of her consent.

Rocklin police detained defendant on September 29, 2013, after observing her driving. Officer Evan Adams took over the investigation for the detaining officer. Officer Adams observed defendant's unsteady gait, constricted pupils, and slurred speech. He conducted field sobriety tests that indicated she was impaired. He had her blow into a preliminary alcohol screening (PAS) device which registered .000, indicating an absence of alcohol. He believed she was under the influence of controlled substances, as opposed to alcohol. He arrested her and transported her to the county jail.

2

Officer Adams sought a blood sample from defendant.  At trial, he explained his "procedure" for obtaining a blood sample from DUI suspects as follows:  "So what we'll normally do is I'll advise them that they're required to, by law, to give a blood sample. We will transport them to the Placer County Jail, a phlebotomist will respond and take the blood sample, which I will witness.  I will then take possession of the blood and book it into evidence."  The officer said that is what he did this time.

Officer Adams stated he told defendant that "since she was under arrest for a DUI, and since I believed it was a controlled substance DUI, she's required, by law, to submit to a blood test."  The officer said defendant did not refuse the blood test:  "She consented and cooperated."  She did not object or resist at any point.  If she had refused, he would have obtained a warrant and performed a forced blood draw.

When asked on cross-examination how he determined that defendant consented to the blood test, Officer Adams replied, "I informed her she was required by law, she gave no objection, Phlebotomist [Sasha] Perez arrives, and she did not resist saying at any point she wanted to refuse the blood draw at all, and the blood was taken without any incident."  Officer Adams did not "directly" ask for her consent, and defendant did not say she consented.  He explained, "What I did is I informed her that she's required by law to submit to it, and then I believe her consent was implied."  Asked how defendant manifested consent, Officer Adams said, "I can't recall if she nodded, I can't recall if she said yes, to be honest with you.  But I can tell you with 100 percent certainty she did not refuse and she did not not consent to the blood draw."

When asked what he would do if a suspect did not give consent and yet did not refuse, Officer Adams said, "Well, my opinion, sir, if they don't give me consent, it is a refusal, so I would go with our DUI refusal procedure which would be the warrant . . . ."

Defense counsel asked what other signs the officer would look for to determine whether the suspect consented if the suspect did not say, "I give consent."  Officer Adams replied, "I would look for someone in any way [to] tell me they didn't want to do

3

the blood draw, ask several questions about the blood draw, resist the blood draw. Obviously, I would take all those as a refusal."

When asked whether he, as a matter of course, asked a suspect who is being interrogated for consent to a blood draw, Officer Adams said, "I don't know if I can really answer that because I don't really interrogate the DUI suspects at that point, if that makes any sense to you. . . ." The officer continued, "Through most DUIs, I've obtained the statement I need prior to the [field sobriety tests], prior to the arrest. I don't usually Mirandize them and get a secondary statement at all."

In this case, defendant told Officer Adams that she had taken Seroquel the night before and another medication. This told the officer what was "on board" that could have been causing her impairment. Asked whether, after obtaining this statement from defendant, he saw any reason to further request for consent to draw her blood, Officer Adams stated, "[W]hat I did is I informed her that she's required by law, as she is, to submit to a blood draw, and then I kind of walk her through the procedure. And, I mean, at any point—I've had several people that don't want to give a blood draw, we'll take that as a refusal, and then we'll move on with the warrant procedure. That's not what happened in this case.

"Q So since Ms. Lopez did not say, 'I don't want a blood draw,' you infer that she consented to this blood draw?

"A Yes."

Defense counsel asked Officer Adams what his conversation with defendant was right before she provided her breath sample. The officer stated, "What I probably told her—what I actually did tell her, because I do it on every DUI, is I tell her that this is not an implied consent test. What it is—and then I explained to her if she is to be arrested for DUI, that she's still required by law to give a blood test or a breath test. In this case it's blood only because it's a controlled substance DUI. And then the . . . breath test does not

4

count as that test. And I also usually explain that it's just another one of the standardized field sobriety tests.

"Q And so when you informed Ms. Lopez of the implied consent law during your blood draw . . . did you inform her that she had a right to refuse and to get—force you to get a warrant?

"A I did not, no.

"Q And why would you not inform her of that right?

"A I mean, I can't tell you, to be honest with you."

Officer Adams testified defendant cooperated with the blood test. He did not remember her specifically but believed her test proceeded normally. She would have been unhandcuffed and directed to take a seat. She moved her arm herself into position for the phlebotomist to draw the blood.

Defendant told a different story at the suppression hearing. She claimed police officers "forcibly" "shoved" her into a chair by physical contact with her shoulders and handcuffed wrists. An officer other than Officer Adams removed the handcuffs, grabbed her arm, and "physically slammed it" down on a counter, telling her they were taking her blood. She repeatedly asked for an attorney. She did not remember a phlebotomist being present.

Defendant did not recall Officer Adams telling her she was required to give a blood sample. She never consented. No one in the room asked her if she consented. She would not have consented had she been asked. On cross-examination, defendant said she did not remember what Officer Adams said to her. She said a male police officer drew her blood. She admitted she was on Metoprolol, a strong blood pressure medication, at the time of the traffic stop.

On rebuttal, Officer Adams stated that Sasha Perez drew defendant's blood. Perez is a phlebotomist and not a police officer, and she was not wearing a police officer's uniform. In turn, Perez testified that her records showed she performed a blood draw for

5

the Rocklin Police Department on the day of defendant's arrest. Although Perez did not recall defendant, she also did not recall anybody being forced to give a blood sample that day.

The trial court denied the suppression motion, finding defendant consented to the blood draw. The court stated: "Officer Adams testified that the defendant was cooperative and did not object to the blood draw. The defendant, on the other hand, testified that she did object and was physically forced to give the blood sample. The court finds the officer's testimony to be more credible and finds that the defendant consented to the blood draw pursuant to California's implied consent law. The court further finds that the blood was drawn in a reasonable manner by a professional phlebotomist."

Defendant appealed to the Superior Court Appellate Division, which affirmed the trial court's order denying suppression. The Appellate Division denied defendant's request to have the matter transferred to the Court of Appeal. We granted defendant's petition for transfer. The Superior Court stayed proceedings pending our resolution of the appeal.

## DISCUSSION

Defendant contends the trial court erred when it denied her motion to suppress. She argues the blood draw violated her rights under the Fourth Amendment because she did not consent to the draw. She claims there is insufficient evidence of voluntary consent, as Officer Adams did not provide admonitions required by the implied consent law, any consent was merely her submission to a claim of lawful authority, and any consent was coerced. We do not agree.

6

# I

*Legal Background*

A.    *Fourth Amendment*

The Fourth Amendment protects the "right of the people to be secure in their persons . . . against unreasonable searches" and provides that "no warrants shall issue, but upon probable cause." A blood draw is a search of the person. (*Birchfield v. North Dakota* (2016) 579 U.S. __ [195 L.Ed.2d 560] (*Birchfield*).) We must determine if the warrantless draw was reasonable.

While a warrant is normally required to conduct a search, there are judicially-created exceptions to the warrant requirement. (*Mitchell v. Wisconsin* (2019) __ U.S. __ [204 L.Ed.2d 1040] (*Mitchell*).) We can quickly eliminate two of them. Generally, a search may be conducted without a warrant when it is performed incident to an arrest or when it is necessitated by exigent circumstances. Neither of these exceptions applies here. A state may not compel a suspect to undergo a blood test without a warrant as a search incident to arrest. (*Birchfield, supra*, 195 L.Ed.2d at pp. 588-589.) California courts have found a blood test may be administered without a warrant as a search incident to arrest where the suspect chooses a blood test after being given a choice between a blood test and a breath or urine test, but that did not occur here. (*People v. Nzolameso* (2019) 39 Cal.App.5th 1181, 1186; *People v. Gutierrez* (2018) 27 Cal.App.5th 1155, 1161, review granted Jan. 2, 2019, S252532.)

As to the exigent circumstances exception, the fact that alcohol dissipates naturally does not by itself justify a warrantless blood test. (*Missouri v. McNeely* (2013) 569 U.S. 141, 152 [185 L.Ed.2d 696].) An exigent circumstance exists when blood-alcohol evidence is dissipating and "some other factor creates pressing health, safety, or law-enforcement needs that would take priority over a warrant application." (*Mitchell, supra*, 204 L.Ed.2d at pp. 1050-1051.) The United States Supreme Court found such factors

7

when a drunk-driving suspect was unconscious, and when the suspect was in a vehicle accident that required police to attend to other pressing needs. (*Ibid*; *Schmerber v. California* (1966) 384 U.S. 757, 770-771 [16 L.Ed.2d 908].) This type of factor does not exist here.

The only possible exception to the warrant requirement that could apply here is when the suspect voluntarily consents to a search. (*Schneckloth v. Bustamonte* (1973) 412 U.S. 218, 219, 234 [36 L.Ed.2d 854] (*Schneckloth*).) A consensual search does not violate the Fourth Amendment "because it is no doubt reasonable for the police to conduct a search once they have been permitted to do so." (*Florida v. Jimeno* (1991) 500 U.S. 248, 250-251 [114 L.Ed.2d 297].) Voluntary consent to a blood test required under the implied consent law satisfies the Fourth Amendment. (*People v. Harris* (2015) 234 Cal.App.4th 671, 685 (*Harris*).)

B.     *Implied consent law*

The implied consent law, section 23612, plays a part in our analysis, but it does not itself establish consent. At the time of defendant's arrest, the implied consent law stated that defendant, by driving a motor vehicle, was deemed to have given her consent to chemical testing of her breath or blood if she was lawfully arrested for driving under the influence. (§ 23612, subd. (a)(1)(A), (B).)[1]

---

[1] Section 23612 in relevant part reads as follows:
"(a)(1)(A)  A person who drives a motor vehicle is deemed to have given his or her consent to chemical testing of his or her blood or breath for the purpose of determining the alcoholic content of his or her blood, if lawfully arrested for an offense allegedly committed in violation of Section 23140, 23152, or 23153. . . . [¶]
"(B)  A person who drives a motor vehicle is deemed to have given his or her consent to chemical testing of his or her blood for the purpose of determining the drug content of his or her blood, if lawfully arrested for an offense allegedly committed in violation of Section 23140, 23152, or 23153. . . .  [¶]
"(C)  The testing shall be incidental to a lawful arrest and administered at the direction of a peace officer having reasonable cause to believe the person was driving a motor vehicle in violation of Section 23140, 23152, or 23153.

8

The implied consent law also required Officer Adams to inform defendant that she could choose between a breath test and a blood test. (§ 23612, subd. (a)(2)(A), (B).) However, if defendant chose a breath test, Officer Adams was authorized to request that she take a blood test because he had reasonable cause to believe she was under the influence of drugs. (§ 23612, subd. (a)(2)(C).) In that event, "[t]he officer shall advise the person that he or she is required to submit to an additional test. The person shall submit to and complete a blood test." (*Ibid*.)

Despite its common name, the implied consent law implicitly grants a suspect the right not to consent to a test. "Under section 23612, by the act of driving on California's

---

"(D)  The person shall be told that his or her failure to submit to, or the failure to complete, the required chemical testing will result in a fine, mandatory imprisonment if the person is convicted of a violation of Section 23152 or 23153, and (i) the suspension of the person's privilege to operate a motor vehicle for a period of one year . . . . [¶]

"(2)(A)  If the person is lawfully arrested for driving under the influence of an alcoholic beverage, the person has the choice of whether the test shall be of his or her blood or breath and the officer shall advise the person that he or she has that choice. . . . [¶]

"(B)  If the person is lawfully arrested for driving under the influence of any drug or the combined influence of an alcoholic beverage and any drug, the person has the choice of whether the test shall be of his or her blood or breath, and the officer shall advise the person that he or she has that choice.

"(C)  A person who chooses to submit to a breath test may also be requested to submit to a blood test if the officer has reasonable cause to believe that the person was driving under the influence of a drug or the combined influence of an alcoholic beverage and a drug and if the officer has a clear indication that a blood test will reveal evidence of the person being under the influence. The officer shall state in his or her report the facts upon which that belief and that clear indication are based. The officer shall advise the person that he or she is required to submit to an additional test. The person shall submit to and complete a blood test. . . . [¶] . . . [¶]

"(4)  The officer shall also advise the person that he or she does not have the right to have an attorney present before stating whether he or she will submit to a test or tests, before deciding which test or tests to take, or during administration of the test or tests chosen, and that, in the event of refusal to submit to a test or tests, the refusal may be used against him or her in a court of law." (Former § 23612, subd. (a)(1), (2), (4) [Stats. 2012, ch. 196, § 1].)

9

roads, [defendant] accepted the condition of implied, advance consent if lawfully arrested for drunk driving. That advance consent, however, could also have been withdrawn at the time of arrest by [defendant's] objection to a breath test or blood draw. ' "[T]he implied consent law is explicitly designed to allow the driver, and not the police officer, to make the choice as to whether the driver will give or decline to give *actual* consent to a blood draw when put to the choice between consent or automatic sanctions. Framed in the terms of 'implied consent,' choosing the 'yes' option affirms the driver's implied consent and constitutes actual consent for the blood draw. Choosing the 'no' option acts to withdraw the driver's implied consent and establishes that the driver does not give actual consent." [Citation.]' " (*People v. Balov* (2018) 23 Cal.App.5th 696, 702, review granted Sept. 12, 2018, S249708 (*Balov*), fn. omitted, original italics.)

A suspect's refusal to consent will have consequences. The implied consent law required Officer Adams to inform defendant that her refusal to submit to testing would result in a fine, suspension of her driver's license, and, if she was convicted of DUI, mandatory imprisonment. (§ 23612, subd. (a)(1)(D).) The law also required Officer Adams to inform defendant that a refusal to submit to the test could be used against her in a court of law, and that she was not entitled to have an attorney present when she decided whether to take the test or during the test. (§ 23612, subd. (a)(4).)

The United States Supreme Court has "referred approvingly to the general concept of implied-consent laws that impose civil penalties and evidentiary consequences on motorists who refuse to comply." (*Birchfield, supra*, 195 L.Ed.2d at pp. 588-589.) But, the court continued, "our decisions have not rested on the idea that these laws do what their popular name might seem to suggest—that is, create actual consent to all the searches they authorize. Instead, we have based our decisions on the precedent regarding the specific constitutional claims in each case, while keeping in mind the wider regulatory scheme developed over the years to combat drunk driving." (*Mitchell, supra*, 204 L.Ed.2d at p. 1045.)

10

Therefore, "rather than determine whether 'implied consent' to a chemical test satisfies the Fourth Amendment, we must determine whether submission to a chemical test, after advisement [or lack of advisement] under the implied consent law, is freely and voluntarily given and constitutes *actual* consent." (*Harris, supra*, 234 Cal.App.4th at p. 686, original italics.)

"The Fourth Amendment test for a valid consent to search is that the consent be voluntary, and 'voluntariness is a question of fact to be determined from all the circumstances,' [citation]." (*Ohio v. Robinette* (1996) 519 U.S. 33, 40 [136 L.Ed.2d 347].) "The totality of the circumstances that must be considered in determining if consent is voluntary includes not only advance consent, but the driver's conduct at the time of arrest and the circumstances surrounding the testing." (*Balov, supra*, 23 Cal.App.5th at p. 702, review granted Sept. 12, 2018, S249708.)

"If the validity of a consent is challenged, the prosecution must prove it was freely and voluntarily given—i.e., 'that it was [not] coerced by threats or force, or granted only in submission to a claim of lawful authority.' [Citations.]" (*People v. Boyer* (2006) 38 Cal.4th 412, 445-446.) " ' "The . . . voluntariness of the consent is to be determined in the first instance by the trier of fact; and in that stage of the process, 'The power to judge credibility of witnesses, resolve conflicts in testimony, weigh evidence and draw factual inferences, is vested in the trial court. On appeal all presumptions favor proper exercise of that power, and the trial court's findings—whether express or implied—must be upheld if supported by substantial evidence.' " ' [Citations.]" (*Harris, supra*, 234 Cal.App.4th at p. 690.)

II

*Substantial Evidence and Omission of Admonitions*

Substantial evidence supports the trial court's finding that defendant voluntarily consented to the blood draw. Consent need not be express. It may be implied from the

11

suspect's actions. "[N]o words at all need be spoken: in appropriate circumstances, consent to enter may be unmistakably manifested by a gesture alone." (*People v. James* (1977) 19 Cal.3d 99, 113 (*James*).) That is the case here. Officer Adams correctly instructed defendant that she was required to undergo a blood test. Defendant did not object or refuse to undergo the test. She did not resist any of the officers' directions or actions. She voluntarily placed her arm on the table to allow the phlebotomist to draw her blood.

Officer Adams testified he obtained consent. He said that if a suspect did not give him consent, he would explain the warrant procedure, implying he would seek a warrant if the suspect did not consent. He did not seek a warrant here. He stated that "with 100 percent certainty [defendant] did not refuse and she did not not consent to the blood draw." These facts, seen in light of the implied consent law and the regulatory scheme to prevent drunk driving, are substantial evidence supporting the trial court's determination that, under the totality of the circumstances, defendant consented to her blood test.

Defendant claims consent cannot be found on these facts because Officer Adams did not give her the implied consent law's admonitions. She claims *Harris* required the officer to give the admonitions for consent to be valid. Defendant misreads *Harris*. The *Harris* court did not hold that an officer's omitting or misstating the advisements rendered consent invalid per se. Rather, the court considered those facts as part of reviewing the totality of the circumstances, and it found on the facts before it that the suspect had consented. (*Harris, supra*, 234 Cal.App.4th at pp. 691-692.) The court expressly rejected defendant's argument, stating that when considering consent under the totality of the circumstances, "failure to strictly follow the implied consent law does not violate a defendant's constitutional rights." (*Id*. at p. 692.)

In *Harris*, police arrested the defendant for driving under the influence of a controlled substance. The officer informed the defendant he was required to submit to a blood test. The officer advised the defendant that refusal to submit to the test would

12

result in the suspension of his license for two to three years, his refusal could be used against him in court, and he could not speak with an attorney about whether to submit to the test. The officer gave no other admonitions. The defendant said, " 'okay.' " The sample was taken, and at no time did the defendant object or resist. (*Harris, supra*, 234 Cal.App.4th at p. 678.)

The Court of Appeal affirmed the trial court's denial of the defendant's motion to suppress. (*Harris, supra*, 234 Cal.App.4th at p. 676.) The *Harris* defendant contended his consent was involuntary because the admonitions the officer gave under the implied consent law were false. (*Id.* at p. 691.) The Court of Appeal disagreed, holding that under the totality of the circumstances, the defendant freely consented to the blood draw and was not coerced or tricked. He verbally agreed to the blood test after being admonished and he did not object or resist. (*Id*. at p. 692.)

The Court of Appeal considered the officer's incomplete and incorrect admonitions as part of the totality of the circumstances. There was no evidence the officer in *Harris* intentionally deceived the defendant or provided patently false information. (*Harris, supra*, 234 Cal.App.4th. at pp. 691-692.) Although the officer did not give the defendant a choice between a breath test or a blood test, he nonetheless correctly stated the defendant was required to take a blood test to check for a controlled substance. And although the officer incorrectly said the defendant's license would be suspended for two to three years if he refused the blood test, he correctly stated defendant's license would be suspended. Considering these facts along with the other circumstances, the Court of Appeal ruled substantial evidence supported the trial court's determination that the defendant voluntarily consented to the blood test because the defendant consented after receiving the admonitions he received and did not object or resist. (*Id*. at p. 692.) Defendant here incorrectly claims that the *Harris* court held the lack of admonitions rendered consent invalid.

13

Defendant directs us to an Oregon case cited by *Harris* to support her claim that the omission of advisements renders her consent invalid. We quote from *Harris*: "In [*State v.*] *Moore* [(2013) 354 Or. 493], 318 P.3d 1133, the Oregon Supreme Court recognized that, while accurate advisement of the consequences under an implied consent law of refusing to submit to chemical testing does not mean that submission to a chemical test is coerced, '*failure* to disclose accurate information regarding the potential legal consequences of certain behavior would seem to be a more logical basis for a defendant to assert that his or her decision to engage in that behavior was coerced and involuntary.' (318 P.3d at p. 1138.) There, the officer's admonition to the motorist differed from the Oregon implied consent law in several respects, yet the Oregon Supreme Court concluded that the officer's admonition accurately advised the motorist about the consequences of refusing to submit to a blood test and did not result in a coerced submission to a chemical test. (318 P.3d at pp. 1139-1140.)" (*Harris, supra*, 234 Cal.App.4th at p. 691, original italics.)

Even if the Oregon court's statement was binding on us, which it is not, it does not make the claim defendant asserts it does. No where did the Oregon court state the lack of admonishments rendered consent invalid per se. Instead, it suggested as dicta that the lack of admonishments would seem to be a "more logical basis" for a defendant to assert that consent was coerced. Even if lack of admonishments is a more logical basis, it nonetheless must be considered as part of the totality of the circumstances.

Since *Harris* was decided, the Court of Appeal in *Balov* considered whether the lack of admonishments rendered consent to a chemical test invalid. On the facts before it, the court found sufficient evidence of voluntary consent. In doing so, it, too, rejected defendant's contention that under *Harris*, consent is involuntary if the implied consent law's admonitions are not given. The court stated: "*Harris* does not hold that failure to inform the defendant of the consequences of refusing a chemical test under section 23612 necessarily results in coerced consent. Rather, *Harris* reiterates the principle that the

14

court must look at the totality of the circumstances to determine the voluntariness of a defendant's consent." (*Balov, supra*, 23 Cal.App.5th at p. 704, fn. 4, review granted Sept. 12, 2018, S249708.)

In *Balov*, the arresting officer told the defendant he was required to submit either to a breath test or a blood test after being arrested for driving under the influence of alcohol. The officer did not inform the defendant he could object to the testing or of the statutory consequences of refusing a test. The defendant said he wanted a blood test. During the test, he remained calm and gave no indication he wanted to refuse the test. (*Balov, supra*, 23 Cal.App.5th at p. 699, review granted Sept. 12, 2018, S249708.)

The Court of Appeal affirmed the trial court's denial of the defendant's suppression motion, finding sufficient evidence of voluntary consent. The court stated, "Section 23612 requires the driver to be told that his or her failure to submit to a test will result in these consequences. However, no 'presumption of invalidity attaches if a citizen consent[s to a search] without explicit notification that he or she was free to refuse to cooperate. Instead, the [United States Supreme] Court has repeated that the totality of the circumstances must control, without giving extra weight to the absence of this type of warning.' (*United States v. Drayton* (2002) 536 U.S. 194, 207 [153 L.Ed.2d 242] [].)" (*Balov, supra*, 23 Cal.App.5th at p. 703, review granted Sept. 12, 2018, S249708.)

As in the case before us, the officer in *Balov* correctly told the defendant he was required to submit to a breath or blood test, and there was no evidence the officer made a false statement or intended to deceive the defendant about his right to refuse a test altogether. (*Balov, supra*, 23 Cal.App.5th at p. 703, review granted Sept. 12, 2018, S249708.) The court reasoned, "[The officer's] failure to communicate the consequences of refusing a chemical test did not make [his] statement any more or less coercive than if the information had been provided. In neither case is the driver advised of his or her right to refuse to test altogether." (*Id*. at p. 704, fn. omitted, review granted Sept. 12, 2018,

15

S249708.)  And, as the court stated, the lack of such an advisement does not establish a presumption of invalidity.  (*Id*. at p. 703, review granted Sept. 12, 2018, S249708.)

The trial court here considered Officer Adams's omissions of the implied consent law's admonitions when it reviewed the totality of the circumstances, and it found defendant nonetheless voluntarily consented to the blood draw.  The omission of the admonitions does not overcome our conclusion that substantial evidence supports the trial court's determination.

III

*Submission to Lawful Claim of Authority*

In a related argument, defendant contends her consent could not be voluntary because she submitted to Officer Adams' misrepresentation of a lawful claim of authority.  The officer told defendant she was required to give a blood sample.  Defendant claims this statement was an order under authority of law, and it was a misstatement because case law requires either voluntary consent or a warrant.  She thus argues this case is more akin to a case such as *Bumper v. North Carolina* (1968) 391 U.S. 543, 549 [20 L.Ed.2d 797] (*Bumper*), where the high court ruled that a claim by police that they had a warrant vitiated consent to search where the warrant was never shown to be valid.

Defendant's comparison is not persuasive.  California cases that have invalidated findings of consent based on the suspect merely submitting to authority have involved "far more coercive circumstances or additional facts such as an illegal arrest or a false claim of authority to search."  (*James, supra*, 19 Cal.3d at p. 110.)  In *James*, the California Supreme Court held the defendant's consent was voluntary when four uniformed officers went to the defendant's house, asked him to step outside, arrested and handcuffed him, and then asked to search the house.  (*Id*. at pp. 106-107.)  The court said, "[T]he arresting officer neither held defendant at gunpoint, nor unduly detained or

16

interrogated him; the officer did not claim the right to search without permission, nor act as if he intended to enter regardless of defendant's answer." (*Id*. at p. 113.) Here, defendant does not challenge her arrest or suggest Officer Adams used any kind of force.

Moreover, Officer Adams did not make a false claim of authority to perform the blood test. Unlike a false or invalid warrant, the implied consent law required defendant to undergo the blood test, and, significantly, it gave her the option to refuse. *Bumper* does not apply here because there, when the officer claimed authority to search a home under a warrant, "he announce[ed] in effect that the occupant ha[d] no right to resist the search." (*Bumper, supra*, 391 U.S. at p. 550.) Here, despite Officer Adams's statement that defendant had to undergo a blood test, the implied consent law gave defendant the right to retract her implied consent and refuse the test. (*Balov, supra*, 23 Cal.App.5th at p. 702, review granted Sept. 12, 2018, S249708.) This distinction sets this case apart from *Bumper*.

And, again, whether defendant knew she could refuse—she did not testify as to whether she understood she had the right to refuse consent—is not determinative. "While knowledge of the right to refuse consent is one factor to be taken into account, the government need not establish such knowledge as the *sine qua non* of an effective consent." (*Schneckloth, supra*, 412 U.S. at p. 227.)

Two opinions from the appellate division of the Santa Clara County Superior Court disagree with each other on this issue. In *People v. Agnew* (2015) 242 Cal.App.4th Supp. 1 (*Agnew*), the reviewing court rejected the defendant's argument that his consent was invalid under *Bumper* as a submission to lawful authority. As happened here, the officer told the defendant he was required by California law to submit to a blood or breath test, but the officer did not give the implied consent law's admonitions. (*Id*. at p. 4.) The court stated that to equate the officer's "accurate statement of the law with the false statement of having a search warrant in *Bumper* is to ignore the implied consent law. Under the implied consent law, moreover, a motorist

17

consents in advance to testing if arrested for driving under the influence, and the issue is then whether the arrested motorist withdraws that consent by refusing to test." (*Id*. at p. 16.)

The officer's omission of the statutory admonitions was a fact to be considered when weighing the totality of the circumstances. (*Agnew, supra*, 242 Cal.App.4th Supp. at p. 18.) "[R]equiring the statutory admonition about the consequences of withdrawing consent in every case, or even treating that as the critical factor, would improperly elevate the admonishment to a constitutional requirement under the Fourth Amendment." (*Id*. at p. 33.)

*People v. Mason* (2016) 8 Cal.App.5th Supp. 11 (*Mason*), reached a different result. In *Mason*, the arresting officer asked the defendant if she would submit to either a blood or breath test, and he told her she was required to give one or the other. The officer did not give the defendant the implied consent law's admonitions. (*Id*. at pp. 16-17.) The reviewing court held the officer's statement, while a true understanding of the implied consent law, was nonetheless misleading as the defendant had a Fourth Amendment right to refuse to submit to the test which the officer omitted to mention. (*Id*. at pp. 21-22.) What the officer "entirely omitted rendered what he did say misleading, at least for Fourth Amendment purposes as [the defendant] maintained a constitutional right to withhold consent to the blood draw." (*Id*. at p. 32.) The lack of the admonitions, considered as part of the totality of the circumstances, showed the prosecution failed to establish voluntary consent. (*Id*. at p. 33.)

Disagreeing with *Agnew's* rejection of *Bumper* in these circumstances, the *Mason* court stated, "[I]t is not such a leap in the totality of circumstances to equate the ' "claim of lawful authority" ' in *Bumper*—there a representation of a warrant that simultaneously induced and vitiated consent—with the representation here, that submission to a chemical test is legally 'required' without the accompanying statutory mandate that refusal may lead to certain consequences; both representations imply that the person does not have an

actual choice to refuse, at least for Fourth Amendment purposes. (*Agnew, supra*, 242 Cal.App.4th Supp. p. 18.) The problem is not just the omission of the right to refuse or even the statutory consequences of a refusal, the absence of neither of which would generally amount to a constitutional violation. (*Agnew, supra*, 242 Cal.App.4th Supp. at pp. 11-16.) But it is this lacuna coming after the assertion that submission is 'required,' a compulsion of mere statutory dignity not negating the constitutional right to refuse, that in this court's view can taint the actual voluntariness of the ensuing consent to a blood draw." (*Mason, supra*, 8 Cal.App.5th Supp. at pp. 22-23.)

We, like the *Balov* court, agree with *Agnew*. (*Balov, supra*, 23 Cal.App.5th at p. 704, fn. 5, review granted Sept. 12, 2018, S249708.) Unlike the officer in *Bumper*, Officer Adams truthfully told defendant she was required to undergo a blood draw. His omission of the admonitions did not make his statement misleading, as the implied consent law gave defendant the right to object to the test.

And unlike the homeowner in *Bumper*, defendant had given her implied consent to the test. The issue under the implied consent law was whether the defendant withdrew or affirmed her prior implied consent. The lack of the admonitions did not deny her a right to resist the test. To give that implied consent no weight, as the *Mason* court appears to do, effectively repeals the implied consent law based on no constitutional infirmity.

Moreover, *Mason*, despite its use of the totality of the circumstances test, converted the admonitions into a constitutional requirement whenever an officer correctly states that the implied consent law requires motorists to submit to chemical tests if lawfully arrested for driving under the influence. "Relying on [the omission of the admonitions] as the only dispositive fact to defeat consent . . . in effect elevates that statutory admonition into a constitutional requirement under the Fourth Amendment. . . . California cases have rejected elevating a similar admonition under the implied consent law to a constitutional requirement, and the United States Supreme Court has rejected

19

imposing analogous admonitions as constitutional requirements." (*Agnew, supra*, 242 Cal.App.4th Supp. at p. 19.)

Officer Adams's omission of the admonitions was one factor for the trial court to consider when it reviewed the totality of the circumstances. The omission did not deny defendant her right to withdraw her implied consent and compel her to consent. The court reviewed all of the circumstances and evidence, including Officer Adams's omission, and it concluded defendant had actually consented to the blood draw. Substantial evidence supports its finding of fact.

IV

*Coercion*

Defendant argues that consent to a blood draw required by the implied consent law can never be voluntary. Analogizing consent of a blood draw to a waiver of constitutional rights by persons pleading guilty to crimes, she claims the implied consent law unlawfully compels a suspect to waive his or her constitutional rights and to consent in order to obtain leniency and avoid the penalties the law imposes for refusing to consent. She asserts such consent can never be voluntary unless the suspect has met and conferred with an attorney who is then present when consent is provided.

The defendant in *Harris* made a similar argument, claiming that consent given after receiving the implied consent law's admonitions could not satisfy the Fourth Amendment because submission was extracted under threat of serious consequences for refusal. (*Harris, supra*, 234 Cal.App.4th at p. 686.) The *Harris* court rejected this argument, as do we. "The fact that a motorist is told he will face serious consequences if he refuses to submit to a blood test does not, in itself, mean that his submission was coerced." (*Id*. at p. 687.)

To reach this conclusion, *Harris* relied on *South Dakota v. Neville* (1983) 459 U.S. 553 [74 L.Ed.2d 748] (*Neville*). In that case, the United States Supreme Court ruled that

20

using a defendant's refusal to submit to a chemical test as evidence in a DUI trial does not violate the defendant's Fifth Amendment privilege against self-incrimination where the implied consent law gave motorists an option to refuse the test. (*Id*. at pp. 562-564.) "Although the court recognized that in extreme situations the choice given to a suspect is no choice at all, such as when the blood is extracted in a manner 'so painful, dangerous, or severe, or so violative of religious beliefs, that almost inevitably a person would prefer "confession," ' the court held that 'the values behind the Fifth Amendment are not hindered when the State offers a suspect the choice of submitting to the blood-alcohol test or having his refusal used against him.' (*Id*. at p. 563.)" (*Harris, supra*, 234 Cal.App.4th at p. 687.)

The defendant in *Neville* conceded that the chemical test was so safe and painless that the state could legitimately compel the suspect to take the test. (*Neville, supra,* 459 U.S. at p. 563.) "Therefore, because 'the offer of taking a blood-alcohol test is clearly legitimate . . .,' the court concluded that 'the action becomes no *less* legitimate when the State offers a second option of refusing the test, with the attendant penalties for making that choice. Nor is this a case where the State has subtly coerced [the defendant] into choosing the option it had no right to compel, rather than offering a true choice. To the contrary, the State wants respondent to choose to take the test, for the inference of intoxication arising from a positive blood-alcohol test is far stronger than that arising from a refusal to take the test.' ([*Neville, supra*, 459 U.S.] at pp. 563-564.) Finally, the court acknowledged that, although 'the choice to submit or refuse to take a blood-alcohol test will not be an easy or pleasant one for a suspect to make,' the difficultly of the decision does not mean the motorist's ultimate choice is coerced. (*Id*. at p. 564.) '[T]he criminal process often requires suspects and defendants to make difficult choices. [Citation.]' (*Ibid.*)" (*Harris, supra*, 234 Cal.App.4th at p. 687.)

Defendant contends *Harris* erred by relying on *Neville* to find no coercion because the latter case involved the Fifth Amendment, not the Fourth. She asserts the choice

made under the implied consent law is "far more reaching than merely asserting a privilege: [Defendant] must decide whether to abrogate her power over government action by waiver of her power to enforce said restrictions against agents of the government." Defendant argues the Fourth Amendment prohibits a waiver of constitutional rights due to a promise of leniency, and she asserts the implied consent law's penalties act as such a promise.

To reach this conclusion, defendant relies on *Bram v. United States* (1897) 168 U.S. 532, 542-543 [42 L.Ed. 568] (*Bram*), which states a confession cannot be obtained by " 'any direct or implied promises, however slight, nor by the exertion of any improper influence.' " She also relies on *Brady v. United States* (1970) 397 U.S. 742, 748 [25 L.Ed.2d 747] (*Brady*), which limited *Bram* to its facts; a confession given by a defendant in custody, alone, and without counsel, after being stripped and searched. (*Bram, supra*, 168 U.S. at pp. 538-539.)

Neither case supports her argument. First, both cases were decided under the voluntariness standard imposed by the Fifth Amendment as it was then interpreted. (*Brady, supra*, 397 U.S. at p. 751; *Bram, supr*a, 168 U.S. at p. 542.) Defendant's consent to a blood test does not trigger a more stringent test of voluntariness under the Fourth Amendment than that required under the Fifth.

Second, the standard of voluntariness stated in *Bram* is no longer correct. Bram's statement that "a confession cannot be obtained by ' "any direct or implied promises, however slight . . ." ' under current precedent does not state the standard for determining the voluntariness of a confession . . . ." (*Arizona v. Fulminante* (1991) 499 U.S. 279, 285 [113 L.Ed.2d 302].) The correct test is the one the trial court applied here, determining the voluntariness of a confession, or consent, by viewing the totality of the circumstances. (*Id*. at pp. 285-286.)

Third, *Brady* directly refutes defendant's argument. The defendant there pleaded guilty to kidnapping to avoid a statutory death sentence if a jury found him guilty.

22

(*Brady, supra*, 397 U.S. at p. 743.)  He contended his plea was not voluntary because the statute operated to coerce his plea and the plea was induced by representations of leniency and clemency.  (*Id*. at p. 744.)

The United States Supreme Court concluded that whether the statutory death penalty caused his plea "does not necessarily prove that the plea was coerced and invalid as an involuntary act." (*Brady, supra*, 397 U.S. at p. 750.)  The high court "decline[d] to hold . . . that a guilty plea is compelled and invalid under the Fifth Amendment whenever motivated by the defendant's desire to accept the certainty or probability of a lesser penalty rather than face a wider range of possibilities extending from acquittal to conviction and a higher penalty authorized by law for the crime charged." (*Id*. at p. 751.)

*Brady* distinguished *Bram* on its facts; in effect, applying the totality of the circumstances test to the *Bram* facts.  (*Brady, supra*, 397 U.S. at p. 754.)  *Brady's* holding, however, implicitly rejected Bram's statement that any inducement or leniency, no matter its substance, rendered a confession or consent invalid, even when entering a plea of guilty.  (*Id*. at p. 755.)  The distinction defendant attempts to draw between the Fourth Amendment and the Fifth does not exist.

Because we find substantial evidence supporting the trial court's finding of consent, we need not address the parties' arguments regarding the good faith exception to the exclusionary rule.

## DISPOSITION

The order denying defendant's suppression motion is affirmed.

                                        _____
                                        HULL, Acting P. J.


We concur:


_____
HOCH, J.


_____
RENNER, J.